UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                              :
TRAVIS HEFFLEY,               :
                              :
         Plaintiff,           :    Civ. No. 17-3647 (NLH) (SAK)
                              :
    v.                        :    OPINION
                              :
                              :
FEDERAL BUREAU OF PRISONS     :
FCI FORT DIX, et al.,         :
                              :
         Defendants.          :
                              :
_____:

APPEARANCES:

Travis Heffley
17225097
Otisville
Federal Correctional Institution
Inmate Mail/Parcels
P.O. Box 1000
Otisville, NY 10963

    *Plaintiff pro se*

Philip R. Sellinger, United States Attorney
Heather Carney Costanzo, Assistant United States Attorney
Office of the United States Attorney
District of New Jersey
401 Market Street, Fourth Floor
Camden, NJ 08101

    *Attorneys for Defendants*


HILLMAN, District Judge

    Plaintiff Travis Heffley filed a complaint against

Defendants Federal Bureau of Prisons FCI Fort Dix ("BOP"),

Christopher Ebinger, Gregory Dobovich, John Mathes, Kevin

Bullock, Mark Holterman, and Robert Samynek (collectively "Officer Defendants") pursuant to <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971).  ECF No. 1.  The Court construed the complaint as alleging that the Officer Defendants used excessive force against Plaintiff during a cell extraction at FCI Fort Dix, New Jersey, and denied him medical care for resulting injuries in violation of the Eighth Amendment's prohibition on cruel and unusual punishment.

Defendants now move for dismissal of the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  ECF No. 62.  They also seek to file their Exhibit 1, a video recording of the cell extraction and aftermath, under seal.  ECF No. 68.[1] Plaintiff has not filed opposition to either motion and declined the opportunity to appear in person for oral argument.  ECF No. 69.

For the reasons herein, the Court will grant the motions. The complaint will be dismissed with prejudice.

## I.   BACKGROUND

Plaintiff was detained in Fort Dix on April 3, 2017.  ECF No. 1 at 2.  He was taken to the special housing unit ("SHU") but refused to enter "a two person cell with two other people." <u>Id.</u>  Plaintiff asserts five members of Fort Dix's extraction

---

[1] The DVD and flash drive containing the video shall be kept in a secure area of the Clerk's Office.

team ("Team") tackled him to the ground, pinning Plaintiff's right arm underneath him.  Id.  "[O]ne or more" of the Team members punched Plaintiff in the right side of his face.  Id. He was eventually put in hand and ankle restraints and taken to an empty cell.  Id.  His clothes were changed before being left in the cell all night, still restrained.  Id.  The restraints were removed around 3 p.m. on April 4.  Id.

Plaintiff alleges that his right knee and eye were injured during the extraction.  Id.  The cuts on his knee were treated, but his eye was not.  Id.  Plaintiff asserts he has "problems with black floating spots in [his] vision."  Id.

Plaintiff filed this complaint on May 22, 2017 against John Does 1-5 Team members.  Id. at 1.  The Court reviewed the complaint under 28 U.S.C. § 1915(e)(2) and concluded sua sponte dismissal was not appropriate.  ECF No. 7.  However, the Court acknowledged that the Complaint could not be served on unknown John Doe defendants, and thus, the Court authorized discovery pursuant to Federal Rules of Civil Procedure 26(d) and 34(c) limited to discovering the identities of the John Doe Team members.  Id. at 3.  On March 20, 2019, this Court received four AO88A subpoenas and ordered the Marshals to serve those subpoenas.  ECF No. 13.  Plaintiff submitted a letter to the Court containing a Form 583 Report of Incident with the Officer Defendants' names.  ECF No. 14 at 3.  The Court ordered the

3

Officer Defendants to be substituted for the John Doe
defendants.  ECF No. 17.

After some procedural difficulties, Magistrate Judge Sharon
A. King appointed pro bono counsel for the limited purpose of
helping Plaintiff complete service.  ECF No. 40.  After being
served, the BOP and the Officer Defendants filed the instant
motion to dismiss and motion to seal their exhibit.  ECF Nos. 62
& 68.

## II.  STANDARD OF REVIEW

A.    Standard for Motion to Dismiss Under Rule 12(b)(1)

A challenge to this Court's subject matter jurisdiction is
determined pursuant to Federal Rule of Civil Procedure 12(b)(1).
Gould Elecs., Inc. v. United States, 220 F.3d 169, 178 (3d Cir.
2000).  A motion to dismiss pursuant to Rule 12(b)(1) may attack
subject-matter jurisdiction facially or factually.  Davis v.
Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016).  A facial attack
does not dispute the facts as alleged in the complaint, id., and
therefore essentially applies the same standard as Rule
12(b)(6), see Severa v. Solvay Specialty Polymers USA, LLC, 524
F. Supp. 3d 381, 389 (D.N.J. Mar. 10, 2021) (citing In re
Schering Plough Corp. Intron/Temodar Consumer Class Action, 678
F.3d 235, 243 (3d Cir. 2012)).  A factual attack, on the other
hand, challenges the allegations by which jurisdiction is
asserted, permitting the Court to weigh evidence outside the

4

pleadings and placing a burden of proof on Plaintiff to demonstrate that jurisdiction indeed exists.  See Davis, 824 F.3d at 346.

B.    Standard for Motion to Dismiss Under Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), when deciding a motion to dismiss, a court accepts all well-pled facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted).  "Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

To survive a Rule 12(b)(6) challenge, the plaintiff's claims must be facially plausible, meaning that the well-pled facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 678.  The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the

5

complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010).

**III. DISCUSSION**

A.   Lack of Subject Matter Jurisdiction

Defendant BOP argues any claims against it should be dismissed for lack of subject matter jurisdiction.  ECF No. 62-1 at 11.  The Court agrees and will dismiss any Bivens claims against the agency.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."  F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994).  "Sovereign immunity is jurisdictional in nature."  Id.   The implied right of action in Bivens does not waive the United States' sovereign immunity.  Therefore, the BOP is immune from suit, and the Court lacks subject matter jurisdiction.  The Court will dismiss the claims against the BOP with prejudice.  Fed. R. Civ. P. 12(b)(1).

B.   Constitutional Claims

The Court construed the complaint as alleging that the Officer Defendants used excessive force against Plaintiff during the cell extraction and denied him medical care for the resulting injury to his eye.  ECF No. 1 at 2.  The Officer

Defendants now move for dismissal of those claims because the Bivens remedy does not extend to them.

"In Bivens, the Court held that it had authority to create 'a cause of action under the Fourth Amendment' against federal agents who allegedly manacled the plaintiff and threatened his family while arresting him for narcotics violations." Egbert v. Boule, 596 U.S. 482, 490 (2022) (quoting Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 397 (1971)). "Over the following decade, the Court twice again fashioned new causes of action under the Constitution — first, for a former congressional staffer's Fifth Amendment sex-discrimination claim; and second, for a federal prisoner's inadequate-care claim under the Eighth Amendment." Id. at 490-91 (citing Davis v. Passman, 442 U.S. 228 (1979); Carlson v. Green, 446 U.S. 14 (1980)). "In the fifty-two years since Bivens was decided, however, the Supreme Court has pulled back the reins to what appears to be a full stop and no farther." Xi v. Haugen, 68 F.4th 824, 832 (3d Cir. 2023).

In 2017, the Supreme Court concluded "that expanding the Bivens remedy is now a 'disfavored' judicial activity." Ziglar v. Abbasi, 582 U.S. 120, 135 (2017). See also Hernández v. Mesa, 140 S. Ct. 735, 742 (2020) ("In both statutory and constitutional cases, our watchword is caution."). "These three cases — Bivens, Davis, and Carlson — represent the only

7

instances in which the Court has approved of an implied damages remedy under the Constitution itself." Abbasi, 582 U.S. at 131. "Indeed, in light of the changes to the Court's general approach to recognizing implied damages remedies, it is possible that the analysis in the Court's three Bivens cases might have been different if they were decided today." Id. at 134.

Abbasi "created a funnel through which plaintiffs alleging constitutional violations by federal officials must pass." Alexander v. Ortiz, No. 15-6981, 2018 WL 1399302, at *4 (D.N.J. Mar. 20, 2018). "First, we ask whether the case presents 'a new Bivens context' — i.e., is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." Egbert, 596 U.S. at 492 (quoting Abbasi, 582 U.S. at 139-40). "If a case does not present a new Bivens context, the inquiry ends there, and a Bivens remedy is available." Shorter v. United States, 12 F.4th 366, 372 (3d Cir. 2021). "[I]f it is a new context, we ask, second, whether there are special factors' indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." Xi, 68 F.4th at 833 (internal quotation marks omitted). The Supreme Court has "observed that these steps 'often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy'; if so, [the court]

may not expand <u>Bivens</u> to cover the claim." <u>Id.</u> (quoting <u>Abbasi</u>, 582 U.S. at 136).

    *1.  Plaintiff's Excessive Force Claim Presents a New Context*

    Plaintiff's allegation that the Officer Defendants used excessive force during the cell extraction is most similar to <u>Bivens</u> itself, but there are key differences that require a finding that Plaintiff's claim arise in a new context. <u>Bivens</u> concerned the use of force under the Fourth Amendment during an arrest. <u>See generally</u> <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971). As a convicted and sentenced prisoner, Plaintiff's excessive force claim falls under the Eighth Amendment. <u>See</u> <u>Whitley v. Albers</u>, 475 U.S. 312, 318-19 (1986).

    This is a significant difference because the Fourth Amendment only requires a showing of an objectively unreasonable use of force, <u>Graham v. Connor</u>, 490 U.S. 386 (1989), whereas the Eighth Amendment requires "a claimant [to] allege and prove the unnecessary and wanton infliction of pain . . . ." <u>Whitley</u>, 475 U.S. at 320. This difference is enough for the Court to conclude that Plaintiff's claim of excessive force presents a new context. <u>See</u> <u>also</u> <u>Abbasi</u>, 582 U.S. at 139-140 ("A case might differ in a meaningful way because of . . . the constitutional right at issue . . . ."); <u>Landis v. Moyer</u>, 610 F.

9

Supp. 3d 649, 657 (M.D. Pa. 2022) ("There is no question that

[plaintiff's] excessive-force claim presents a new context . . .

."").

    *2.   Plaintiff's Medical Care Claim Presents a New Context*

    Plaintiff's second allegation against the Officer

Defendants, that they denied him treatment for his eye injury,

is also a new <u>Bivens</u> context.  <u>Carlson</u>, in which the Supreme

Court extended the remedy to a federal prisoner's inadequate-

care claim under the Eighth Amendment, is the most applicable of

the three <u>Bivens</u> remedy cases to this claim.  <u>Carlson v. Green</u>,

446 U.S. 14 (1980).  Once again, however, there are significant

differences between <u>Carlson</u> and the present facts that make

Plaintiff's inadequate-care claim a new context.  <u>See</u> <u>Egbert</u>,

596 U.S. at 501 ("[A] plaintiff cannot justify a <u>Bivens</u>

extension based on 'parallel circumstances' with ... <u>Carlson</u>

unless he also satisfies the 'analytic framework' prescribed by

the last four decades of intervening case law.").

    "[T]he <u>Carlson</u> Court extended an implied cause of action

for money damages pursuant to <u>Bivens</u> where the alleged

deliberate indifference of prison officials was most serious; it

resulted in a fatality of a prisoner."  <u>Peguero v. Quay</u>, No.

1:22-CV-00057, 2023 WL 2410882, at *10 (M.D. Pa. Mar. 8, 2023)

(declining to extend <u>Bivens</u> remedy to claim of chronic low back

pain).  Plaintiff's injury was the result of an isolated

incident whereas Carlson concerned the failure to treat a
chronic condition that could be, and ultimately was, fatal.
Plaintiff "may have been injured, the severity of his injuries
have not proven to be fatal." Hurst v. Dayton, No. 22-CV-00171-
DKW-RT, 2023 WL 2526460, at *5 (D. Haw. Mar. 15, 2023)
(declining to extend Bivens remedy to medical conditions brought
on by prison riot), appeal filed, No. 23-15523 (9th Cir. Apr. 5,
2023). "This difference is significant for multiple reasons,
including that administrative and injunctive relief would have a
completely different application to Plaintiff's claims than to
the claims in Carlson . . . ." Washington v. Fed. Bureau of
Prisons, No. CV 5:16-3913-BHH, 2022 WL 3701577, at *5 (D.S.C.
Aug. 26, 2022). Plaintiff's claim presents a new Bivens
context, and the Court must proceed to the second step of
review.

    *3. Special Factors Counsel Against Extending Bivens*

Step two requires the Court to consider "whether special
factors counsel hesitation in extending a Bivens remedy." Xi v.
Haugen, 68 F.4th 824, 836 (3d Cir. 2023)(cleaned up). "The
Bivens inquiry does not invite federal courts to independently
assess the costs and benefits of implying a cause of action. A
court faces only one question: whether there is any rational
reason (even one) to think that Congress is better suited to
'weigh the costs and benefits of allowing a damages action to

proceed.'"  Egbert, 596 U.S. at 496 (quoting Abbasi, 582 U.S. at 136).  "If there is even a single 'reason to pause before applying Bivens in a new context,' a court may not recognize a Bivens remedy."  Id. at 492 (quoting Hernández v. Mesa, 140 S. Ct. 735, 743 (2020)).  See also Graber v. Doe II, 59 F.4th 603, 609 (3d Cir. 2023).

The Supreme Court has held that "a court may not fashion a Bivens remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'"  Egbert, 596 U.S. at 495 (quoting Abbasi, 582 U.S. at 137).  The Supreme Court has held that the BOP's administrative remedy program satisfies this requirement.  Id. at 497 (citing Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 74 (2001)).[2]  See also Bulger v. Hurwitz, 62 F.4th 127, 140-41 (4th Cir. 2023) (finding that BOP's administrative remedy is a sufficient "alternative remedial structure" in special factors analysis); Silva v. United States, 45 F.4th 1134, 1141 (10th Cir. 2022) (same).  It is irrelevant that monetary damages are not available through the BOP's program.  "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts

---

[2] Plaintiff does not appear to have used the administrative remedy program, stating that he "tried informal resolutions." ECF No. 1 at 2.

cannot second-guess that calibration by superimposing a <u>Bivens</u> remedy." <u>Egbert</u>, 596 U.S. at 498.  The Court "recognize[s] this remedial scheme might prove to be cold comfort to [Plaintiff], who seeks an adversarial process and monetary damages, but the Supreme Court has declared that the government's procedures need not be as effective as an individual damages remedy to foreclose <u>Bivens</u> relief." <u>Barry v. Anderson, et al.</u>, No. 22-3098, 2023 WL 8449246, at *4 (3d Cir. Dec. 6, 2023).

Accordingly, the Court must dismiss Plaintiff's constitutional claims against the Officer Defendants as <u>Bivens</u> does not afford him a remedy absent Congressional action.

C.   <u>Motion to Seal</u>

Defendants also move to seal an exhibit to their motion, a video recording of the cell extraction and aftermath.  ECF No. 68.

"It is well-settled that there exists, in both criminal and civil cases, a common law public right of access to judicial proceedings and records." <u>In re Cendant Corp.</u>, 260 F.3d 183, 192 (3d Cir. 2001).  This "right of access extends beyond simply the ability to attend open court proceedings.  Rather, it envisions a pervasive common law right to inspect and copy public records and documents, including judicial records and documents." <u>Id.</u> (internal quotation marks omitted).  A party seeking to seal portions of the judicial record from public view

13

bears party "bears the heavy burden of showing that the material
is the kind of information that courts will protect and that
disclosure will work a clearly defined and serious injury to the
party seeking closure."  Millhouse v. Ebbert, 674 F. App'x 127,
128 (3d Cir. 2017) (per curiam) (internal quotation marks and
citations omitted).

In deciding a motion to seal, the Court considers:

(a) the nature of the materials or proceedings at issue;

(b) the legitimate private or public interest which
warrants the relief sought;

(c) the clearly defined and serious injury that would
result if the relief sought is not granted;

(d) why a less restrictive alternative to the relief
sought is not available;

(e) any prior order sealing the same materials in the
pending action; and

(f) the identity of any party or nonparty known to be
objecting to the sealing request.

L. Civ. R. 5.3(c)(3).

The public has a strong interest in the openness of
judicial records.  "Consideration of the public's right of
access must be the starting point, not just one of multiple
factors.  The scale is tipped at the outset in favor of access."
In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig., 924 F.3d
662, 677 (3d Cir. 2019).  "The public's interest is particularly
legitimate and important where, as in this case, at least one of

the parties to the action is a public entity or official."
Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir.
1994).  Plaintiff has a right to have his complaint adjudicated
in a public process, and the public has a right to information
about how federal prisons use force to restrain an inmate.  See
In re Avandia Mktg., 924 F.3d at 671 (directing courts to
consider "whether confidentiality is being sought over
information important to public health and safety" and "whether
the case involves issues important to the public").
Additionally, for civil trials, there is a First Amendment right
of access which requires a "much higher showing" than the common
law right of access. Id. at 673 (3d Cir. 2019).

    However, the Court concludes the public interest is
slightly reduced in this specific instance because the Court did
not consider the video's contents as part of Defendants' motion
to dismiss; the Court's decision rests on the unavailability of
a Bivens remedy for the facts alleged in Plaintiff's public
complaint.  Thus, there is not a concern that a critical basis
for the Court's decision is being withheld from public scrutiny.
The Court now proceeds to consider whether Defendants have
overcome this reduced public interest in having access to the
video.

    The video chronicles the April 3, 2017 cell extraction that
is the subject of Plaintiff's complaint.  It begins with a

15

briefing by non-party BOP officials and the Officer Defendants in which they set forth the use of force authorization process. The group proceeds through interior locations within Fort Dix's SHU to Plaintiff's location.  A non-party staff member attempts to deescalate the confrontation, but ultimately the Officer Defendants enter the cell and forcefully restrain Plaintiff. They then escort Plaintiff through the hallway to another cell. The Officer Defendants remove Plaintiff's clothing, give him new attire, and place him in ambulatory restraints.  A non-party medical officer then examines Plaintiff.  The Officer Defendants exit the cell and return to the debriefing room.

Defendants argue the video should be kept under seal to protect "sensitive law enforcement information; namely the interior of the FCI Fort Dix Special Housing Unit and BOP techniques for conflict avoidance, cell extraction, and locations and movement within FCI Fort Dix."  ECF No. 68-1 at 4. They also cite the need to protect "Plaintiff's personal medical information."  Id.

Some of these reasons are not persuasive reasons to seal the video.  Plaintiff has a legitimate privacy interest in his medical information, see Doe v. Delie, 257 F.3d 309, 315 (3d Cir. 2001), but he inserted the relevance of his medical information and conditions into this action by alleging Defendants denied him necessary medical care.  The exam reveals

16

minimal health information, and Plaintiff is only shown from the waist up when his clothing is removed.  Moreover, information about BOP conflict avoidance techniques is publicly accessible as part of the BOP's program statement on the Use of Force and Application of Restraints, Program Statement 5566.06 CN-1 (Aug. 29, 2014), available at https://www.bop.gov/resources/policy_and_forms.jsp (last visited Dec. 15, 2023).

That being said, the BOP has a strong security interest in keeping the layout of Fort Dix's SHU confidential.  "[O]ther courts have concluded that releasing sensitive, security related information about the internal workings of a prison creates a risk of danger to correction officers and other inmates." Kearney v. Bayside State Prison Admin., No. 17-06269, 2023 WL 2207392, at *2 (D.N.J. Feb. 23, 2023) (citing cases).  The information relayed in the video also goes beyond the general use of force guidelines set forth in the BOP's program statement and shows specific cell extraction techniques.  If this information were publicly accessible, other inmates could access the recording and use that information to anticipate BOP actions during a cell extraction.  This would negatively impact the BOP's ability to maintain security and safety within its facilities.

The Court finds that Defendants have articulated a strong, legitimate interest in protecting the security and operations of

the prison which warrants the relief sought and outweighs the
public interest in accessing the video.  Plaintiff's complaint
and Defendants' moving papers remain publicly accessible, as
will the Court's Opinion and Order, so Plaintiff and the public
will have access to "the legal issues in play, the factual
circumstances, and the areas of dispute between the parties."
ECF No. 68-1 at 3.[3]

The Court also concludes there is no less restrictive
alternative as the sensitive information about the interior
locations and extraction techniques is the entire video.  There
are no prior orders sealing the video, although it is subject to
a discovery confidentiality order.  ECF No. 65.  Plaintiff has
not objected to the motion to seal and declined the opportunity
to appear in person for oral argument.  ECF No. 69.  He will not
be prejudiced by sealing the video because he was granted the
opportunity to view it as part of the discovery confidentiality
order.  ECF No. 65.

The Court will grant the motion to seal the video
recording.  The Clerk's Office will be ordered to maintain the
original video pursuant to the sealed filings guidelines.

---

[3] The Court notes that the analysis may have been different if the
case were proceeding to trial since the video would have been
entered into evidence as part of the trial record, but the Court
is dismissing the complaint on jurisdictional grounds without
reaching the merits.

18

## IV.   CONCLUSION

For the reasons set forth above, the Court will grant Defendants' motion to dismiss and motion to seal.

An appropriate Order follows.

Dated: December 21, 2023          s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.